**In re MIDWEST EYE CENTER.**

[Cite as *In re Midwest Eye Ctr.* (1995), 104 Ohio App.3d 215.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APH11–1591.

Decided May 30, 1995.

*Dinsmore & Shohl, Deborah R. Lydon, Frederick N. Hamilton* and *George H. Vincent,* for appellant David M. Schneider, M.D., Inc.

*Betty D. Montgomery*, Attorney General, and *Steven P. Dlott*, Assistant Attorney General, for appellee, Ohio Department of Health.

*Squire, Sanders & Dempsey, Terri–Lynne B. Smiles* and *Robert C. Maier*, for *amicus curiae*, Ohio State Medical Association.

———————

CLOSE, Judge.

This is an appeal from an order of the Certificate of Need Review Board ("CONRB"), affirming the reviewability determination of the Director of the Ohio Department of Health ("ODH"). ODH determined that certain outpatient surgery services constitute a "reviewable activity" under Ohio's Certificate of Need ("CON") laws. These services have been performed for a number of years as part of the private ophthalmology practice known as Midwest Eye Center ("Midwest"). Midwest is an entity owned and operated by Dr. David M. Schneider and his professional corporation, Dr. David M. Schneider, M.D., Inc.

Midwest has been in existence since approximately 1986, and has been Medicare-certified for the performance of surgery at its 4425 Eastgate Boulevard location since October 1987. Dr. Schneider and his employees are the only physicians who use the facility to perform surgery. Over the years, Midwest has charged facility fees to both Medicare and other patients for the costs of performing surgery. After six years of providing these services and collecting facility fees, an insurance company requested verification that Midwest did not need a CON for its surgery services. This insurance company was a potential, additional, third-party payer for whom Midwest was seeking to become a provider. Thus, in October 1993, Midwest wrote to ODH and asked for a letter of clarification regarding its "CON status." ODH determined that Midwest's surgery services did, in fact, constitute a "reviewable activity" requiring a CON. This determination was based upon Midwest's collection of "facility fees" from non-Medicare, third-party payers. ODH acknowledged that, prior to this time, such activities would not have been considered "reviewable."

Midwest appealed to the CONRB. The hearing examiner recommended reversing ODH's order because it was based upon a newly adopted position of ODH which had not been promulgated in accordance with R.C. Chapter 119. The CONRB, however, rejected this recommendation and affirmed the reviewability determination of ODH.

On appeal to this court, Midwest raises the following two assignments of error:

"First Assignment of Error: The Certificate of Need Review Board erred in affirming the determination of the Director of the Ohio Department of Health herein, because the determination was arbitrary and capricious and constituted a

denial of Midwest Eye Center's rights to due process and equal protection under the Constitutions of the State of Ohio and of the United States.

"Second Assignment of Error: The Certificate of Need Review Board erred in affirming the determination of the Director of the Ohio Department of Health that the activities of Midwest Eye Center constituted the creation of a 'health care facility' and a 'reviewable activity' within the meaning of Ohio Revised Code § 3702.51."

As we find the second assignment of error dispositive, the first assignment of error is rendered moot and, therefore, overruled. Consequently, it is not necessary to address the constitutional issues raised in the first assignment of error.

What constitutes a "reviewable activity" is set forth in R.C. 3702.51(R). The relevant provision is found in R.C. 3702.51(R)(5), which states that a reviewable activity is:

"The establishment, development, or construction of a new health care facility or a change from one category of health care facility to another[.]"

Private medical practice, as a general rule, is exempt from CON review. This is clearly stated in R.C. 3702.51(G) as follows:

"A health care facility does not include the offices of private physicians * * * whether for individual or group practice * * *."

ODH, however, determined that Midwest's surgical services brought it within the definition of "health care facility" under R.C. 3702.51(G)(7), because it operated as an "ambulatory surgical facility." Ohio Adm.Code 3701–12–01(H)(11) lists the criteria necessary for determining whether an entity constitutes an "ambulatory surgical facility." Although ODH found that Midwest "held itself out" as an ambulatory surgical facility, it found the determinative factor to be the fact that Midwest charged "facility fees." The CONRB agreed with ODH's determination. Additionally, the CONRB found that another factor in Ohio Adm.Code 3701–12–01(H)(11) was met. In noting that Midwest had more than one office, the CONRB felt that the "organizational relationships" factor also supported ODH's determination that Midwest operated as an ambulatory surgical facility, thereby rendering it reviewable as a "health care facility."

We find it unnecessary to determine whether these factors establish an exception to the general rule of nonreviewability in this case. The threshold criterion was not met. Midwest's activities do not meet the primary elements of R.C. 3702.51(R), the statutory provision which establishes "reviewable activities" in Ohio. Under R.C. 3702.51(R)(5), only a *"new* health care facility" or a *"change"* in the type of health care facility is reviewable. Neither situation is present here.

■ The real issue, therefore, is whether Midwest is legally performing services which it has performed for years. We find it significant that, prior to 1993, ODH had uniformly taken the position that collection of facility fees did not make a physician's practice reviewable. Also significant is the fact that Midwest's surgical practice, which had been in existence since 1987, would not have been considered a reviewable activity prior to 1993.

A review of the transcript of proceedings indicates that Midwest's facility has been legally in existence. From its inception, in 1986, up through October 1993, when it applied for a letter verifying its nonreviewability status, Midwest was not in violation of any regulation, law or determination concerning ambulatory surgical facilities or other reviewable activities.

The fact that Midwest applied for a reviewability determination, after the change in ODH policy, does not make its surgical practice a reviewable activity. Midwest operated legally as a nonreviewable practice for years. Simply put, R.C. 3702.51(R) requires the creation of a *new* health care facility, or a *change* in the type of health care facility, before a facility may be considered to be a "reviewable activity." Even assuming Midwest qualifies as an ambulatory surgical facility and, thus, a health care facility, Midwest's surgical activities were not *new*, nor did they constitute a *change*. For this reason alone, the reviewability determination was contrary to law. The CONRB's order affirming ODH's determination is, therefore, reversed.

■ We note additionally, however, that, even under Am.Sub.S.B. No. 50, which was passed by the House during the pendency of this appeal, the result would not differ. The bill added a new provision, R.C. 3702.30(A), which defines "ambulatory surgical facility" as "a facility, * * * in which outpatient surgery is routinely performed, * * * which *functions separately* * * * from the offices of private physicians." (Emphasis added.) Both Dr. Schneider and Midwest's office supervisor testified that the surgery services were not separate from the physicians' office practice. This testimony is uncontroverted. Thus, even if Midwest's practice was determined to be a creation of a *new* facility, or a *change*, it would not qualify as a reviewable activity under the recently enacted R.C. 3702.30(A)(1).

Appellant's second assignment of error is sustained, and appellant's first assignment of error is overruled as moot. The order of the CONRB is reversed, and this matter is remanded to the board for further proceedings consistent with this opinion.

*Order reversed*
*and cause remanded.*

JOHN C. YOUNG and PETREE, JJ., concur.